UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO REGIONAL COUNCIL OF<br>CARPENTERS PENSION FUND, *et al.*,<br><br>        Plaintiffs,<br>v.<br><br>SPORTS EQUIPMENT INSTALLATION, INC.<br>and JAMIE R. DAHL,<br><br>        Defendants. | 14 CV 08467<br><br>Judge Chang |

## PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT AGAINST DEFENDANT SPORTS EQUIPMENT INSTALLATION, INC. PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 55 AND 56

Plaintiffs, Chicago Regional Council of Carpenters Pension Fund, Chicago Regional Council of Carpenters Welfare Fund, Chicago and Northeast Illinois Regional Carpenters Apprentice and Trainee Program Fund and Labor/Management Union Carpentry Cooperation Promotion Fund (hereinafter the "Trust Funds") move this Court pursuant to Federal Rules of Civil Procedure 55 and 56 to enter judgment against defendant Sports Equipment Installation, Inc. ("Sports Equipment"). This Court should enter judgment against Sports Equipment because Sports Equipment breached its collective bargaining agreement with the Chicago Regional Council of Carpenters ("Union") that required Sports Equipment to pay fringe benefit contributions to the Trust Funds during the period January 1, 2012 through December 31, 2015 ("Audit Period"). Sports Equipment is liable to the Trust Funds for $344,399.68 broken down as follows: unpaid fringe benefit contributions in the amount of $234,323.29, liquidated damages in the amount of $46,864.67, interest in the amount of $28,250.99, auditors' fees in the amount of $3,210.80 and attorneys' fees and costs in the amount of $31,749.93.

1

**Summary of the Trust Funds' Motion**

Sports Equipment agreed to be bound by the collective bargaining agreement with the Union and therefore is a union employer. The collective bargaining agreement and the Employee Retirement Income Security Act ("ERISA") require a union employer, like Sports Equipment, to pay fringe benefit contributions for each hour worked by employees performing bargaining unit work and to periodically submit to an audit of its books and records to ensure that the employer has complied with its obligation to pay fringe benefit contributions. The Trust Funds filed this lawsuit to compel Sports Equipment to submit to an audit and to pay any amounts due based on the audit. Sports Equipment failed to answer the Trust Funds' complaint so a default order was entered against Sports Equipment on February 10, 2015. <u>The order of default has not been vacated and Sports Equipment has not filed an answer.</u> An audit was completed of Sports Equipment revealing unpaid fringe benefit contributions. The Trust Funds issued two sets of admission requests to prove the findings in the audit. Sport Equipment failed to respond and this Court ruled that the facts set forth in the admission requests were deemed admitted by orders dated March 16, 2017 and April 6, 2017.[1] (Order, March 16, 2017, Ex. 3; Order, April 6, 2017, Ex. 4) The Trust Funds now bring this motion for entry of a final judgment pursuant to this Court's order of February 10, 2015 and pursuant to Federal Rules of Civil Procedure 55 and 56.

**I.  UNDISPUTED FACTS**

    **A.  Order of Default against Sports Equipment**

The Trust Funds filed a complaint against Sports Equipment to compel Sports Equipment

---

[1] Plaintiffs' First Set of Admission Requests to Defendant Sports Equipment Installation, Inc. attached as Exhibit 1 are referred to herein as "First Set of Admission Requests." Plaintiffs' Second Set of Admission Requests to Defendant Sports Equipment Installation, Inc. attached as Exhibit 2 are referred to herein as "Second Set of Admission Requests."

to submit to an audit and to pay any amounts found due and owing. (Complaint, Docket Report No. 1) On February 10, 2015, this Court entered an order of default against Sport Equipment pursuant to Federal Rule of Civil Procedure 55 ("Rule 55") which was never vacated. (Order, Feb. 10, 2015, Ex. 5)

> Pursuant to Federal Rule of Civil Procedure 55(a), an order of default is hereby entered in favor of the Chicago Regional Council of Carpenters Pension Fund *et al.* ("Trust Funds") and against defendants Sports Equipment Installation, Inc., a dissolved Wisconsin corporation and Jamie R. Dahl, individually and doing business as Sports Equipment Installation, Inc. (collectively Sports Equipment Installation, Inc. and Jamie R. Dahl are referred to herein as "Defendants"). Defendants are hereby ordered:
>
> A. to provide the Trust Funds or their designated auditors, Legacy Professionals, LLP complete access to Defendants' books records within twenty-one (21) days so that the Trust Funds may conduct an audit of Defendants' fringe benefit contributions for the period January 1, 2012 through the present;
>
> B. to pay any and all amounts the Trust Funds may discover to be due pursuant to the audit;
>
> C. to pay auditor's fees incurred by the Trust Funds to complete the audit of Defendants' books and records;
>
> D. to pay interest on the amount that is due;
>
> E. to pay interest or liquidated damages on the amount that is due, whichever is greater; and
>
> F. to pay reasonable attorneys' fees and costs the Trust Funds incurred in this action and attorneys' fees that the Trust Funds incur to obtain full compliance with this Order and to collect any amounts due and owing to the Trust Funds.

(Order, Feb. 10, 2015, Ex. 5). <u>This order was never vacated, and Sports Equipment never filed an answer to the complaint in this lawsuit.</u>

**B.    The Trust Funds**

The Trust Funds provide pension, health and other benefits to Union members and others. (Libby Decl. ¶1, Ex. 6) Each of the Trust Funds are governed and administered pursuant to a trust agreement (hereinafter collectively "Trust Agreements"). (Libby Decl. ¶2, Ex. 6) The

Trust Agreements also give the Trustees the authority to collect and manage contributions from employers who have agreed to be bound by the terms of the collective bargaining agreement ("Area Agreement") for the Chicago Regional Council of Carpenters United Brotherhood of Carpenters and Joiners of America. (Libby Decl. ¶2, Ex. 6)

    **C.    Sports Equipment**

Sports Equipment signed a collective bargaining agreement in approximately 2007 and remained a signatory with the Union during the Audit Period. (Dep. of J. Dahl, pp. 38, 78, Ex. 7; Libby Decl. ¶¶3-4, Ex. 6) Pursuant to the collective bargaining agreement, Sports Equipment submitted fringe benefit contributions to the Trust Funds during the Audit Period affirming it is bound by the collective bargaining agreement. (Dep. of J. Dahl, pp. 30-31, 68, Ex. 7; Decl. of J. Libby ¶4, Ex. 6)

During the Audit Period—which is the period which is the subject of this lawsuit—the aptly named Sports Equipment performed the removal (*i.e.*, "demo" or demolition) of sports equipment and the installation of sporting equipment, including items such as gym curtains, gym pads, basketball backstops and the ceiling masts on which the backstops are mounted, volleyball equipment and batting cages using basic hand tools. (First Set of Admission Requests ¶¶1-300, Ex. 1; Dep. of J. Dahl, pp. 40-41, 64, 75-77, 95-96, Ex. 7) This is bargaining unit work that was performed within the geographical jurisdiction of the Union. (First Set of Admission Requests ¶¶1-300, Ex. 1; Decl. of R. Bonafiglio ¶¶4-7, Ex. 8)

Sports Equipment submitted monthly fringe benefit contribution reports to the Trust Funds during the Audit Period. Sports Equipment reported a combined 160 hours of "Total Actual Hours Worked" on Sport Equipment's June and July 2014 Combined Fringe Benefit Funds and Dues Checkoff Report and paid $4,419.36. (Second Set of Admission Requests ¶¶1-

4

4, Ex. 2; Dep. of J. Dahl, pp. 61-62, 65-68 , Ex. 7; Libby Decl. ¶4, Ex. 6)

Sports Equipment admits that it is required to maintain and produce books and records sufficient for the Trust Funds to determine whether Sports Equipment accurately reported and paid contributions Sports Equipment owes to the Trust Funds. (Second Set of Admission Requests ¶5, 6, Ex. 2) Sports Equipment has employees who work on its jobs other than Jamie Dahl, the owner of Sports Equipment. (Dep. of R. Bonafiglio, pp. 10-12, Ex. 9) Sports Equipment further admits that except for the 160 hours of fringe benefit contribution hours reported by Sports Equipment to the Trust Funds in June and July 2014, Sports Equipment does not have, did not maintain and did not produce any records to show the hours worked by its owner, Jamie Dahl, its employees or its independent contractors on the substantial number of projects that Sports Equipment performed within the jurisdiction of the Union during the Audit Period. (Second Set of Admission Requests ¶¶7-15, Ex. 2; Dep. of J. Dahl, pp. 57-59, 92, Ex. 7) Sports Equipment also did not maintain copies of the invoices issued to its customers for the work it performed. (Dep. of J. Dahl, pp. 56-59, Ex. 7)

### D. The Audit of Sports Equipment

In 2016, Legacy Professionals, LLP conducted an audit on behalf of the Trust Funds of Sports Equipment's fringe benefit contributions for the Audit Period for the purpose of determining whether Sports Equipment had complied with its obligation to pay fringe benefit contributions to the Trust Funds. (Libby Decl. ¶6, Ex. 6) The Trust Funds incurred $3,210.80 in auditors' fees for the audit of Sports Equipment's fringe benefit contributions. (Libby Decl. ¶7, Ex. 6)

### E. Adjusted Audit Based On Sports Equipment's Invoices to Its Customers

The Trust Funds issued subpoenas to Sports Equipment's customers, namely Haldeman-

Homme, Inc. and The Goodson Company who produced invoices to the Trust Funds revealing substantial work performed by Sports Equipment during the Audit Period in the geographical jurisdiction of the Union which Sports Equipment does not dispute. (First Set of Admission Requests ¶¶1-300, Ex. 1; Dep. of R. Bonafiglio , pp. 5-6, Ex. 9; Dep. of M. Gruning, pp. 16-17, 19, 35-36, Ex. 10)

Based on the invoices, payment records and information obtained by the Trust Funds, the audit report was adjusted to reflect this new information. The Adjusted Audit Report shows that Sports Equipment owes $234,323.29 in unpaid contributions. (Libby Decl. ¶6, Ex. 6) By failing to respond to the Trust Funds' Second Set of Admission Requests, Sports Equipment admitted that it owes the Trust Funds $234,323.29 in unpaid fringe benefit contributions for work performed by Sports Equipment during the Audit Period as shown by the invoices produced by the companies that hired Sports Equipment to perform work within the jurisdiction of the Union during the Audit Period. (Second Set of Admission Requests ¶¶19-20, Ex. 2; Order, April 6, 2017, Ex. 4)

## II.　　STANDARD FOR JUDGMENT

### A.　　Entry of Default Judgment Pursuant to Rule 55.

Rule 55 provides in part that the when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defendend and the failure is shown by affidavit or otherwise, the clerk must enter the party's default. Specifically, Rule 55 states:

> (a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> (b) Entering a Default Judgment.
>
> > (1) *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant

> who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) *By the Court.* In all other cases, the party must apply to the court for a default judgment. … If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. …

*See* Fed. R. Civ. Pro. 55. Because Defendant has not answered the complaint in this matter or moved to vacate this Court's default order of February 10, 2015, this Court should enter a final judgment pursuant to Rule 55.

### B. Entry of Summary Judgment Pursuant to Rule 56

Alternatively, if the Court finds that Sports Equipment has defended this action, then this Court should enter summary judgment against Sports Equipment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *Chicago Regional Council of Carpenters Pension Fund v. TMG Corporation*, 2016 U.S. Dist. LEXIS 115284 5-6 (Aug. 29, 2016) (Kennelly, J.) Although the court construes the record in the light most favorable to the nonmoving party, "[a] party may not rest on mere allegations or denials of his pleadings; similarly, a bare contention that an issue of fact exists is insufficient to raise a factual issue. . . ." *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960 (1983). In the case at hand, the material facts are undisputed so summary judgment is also appropriate.

### III. ARGUMENT

### A. Liability for Unpaid Fringe Benefit Contributions

Sports Equipment is bound by the terms of the collective bargaining agreement with the Union which requires Sports Equipment to pay fringe benefit contributions to the Trust Funds for

7

the hours spent performing bargaining unit work. Sports Equipment breached its agreement with the Union by systematically failing to pay fringe benefit contributions for hours spent performing bargaining unit work within the Union's geographic jurisdiction and by failing to maintain records of the hours worked. Under ERISA, Sports Equipment is liable for the unpaid contributions. *See* 29 U.S.C. §1145. ("Every employer who is obligated to make contributions to a multi employer plan under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement").

Based on the invoices and payment records obtained by the Trust Funds from Sports Equipment's customers and based on Sports Equipment's admissions as a result of its failure to respond to the admission requests served upon it, Sports Equipment owes $234,323.29 in unpaid fringe benefit contributions. (Second Set of Admission Requests ¶¶19, 20, Ex. 2; Order, April 6, 2017, Ex. 4)

Pursuant to Rule 55 and this Court's prior order of February 10, 2015, this Court should enter judgment against Sports Equipment for unpaid fringe benefit contributions in the amount of $234,323.29.

In addition, it has been widely held by courts within the Seventh Circuit that based on facts like those set forth above, a signatory is liable for fringe benefit contributions and that summary judgment is warranted under Rule 56. *See, e.g., Trustees of Teamsters Union Local 142 Pension Trust Fund v. JGM Enterprises, Inc.,* 2007 WL 489226 *4 (N.D. Ind. 2007) (Cherry, J.); *Chicago District Council of Carpenters Pension Fund v. Lovering Johnson, Inc.,* 2000 WL 983555 *2, 4 (N.D. Ill. July 17, 2000) (Gottschall, J.); *Chicago District Council of Carpenters Pension Fund v. Skender Construction Co., Inc.,* 22 F.Supp.2d 787, 790, 795 (N.D.

8

Ill. 1998); *Chicago District Council of Carpenters Pension Fund v. Ferm Siding, Inc.*, 1996 WL 604022 *4 (N.D. Ill. 1996) (Anderson, J.); *Chicago District Council of Carpenters Pension Fund v. R.J. Ward Construction, Inc.*, 1993 WL 535323 *5,6 (N.D. Ill. Dec. 16, 1993) (Kocoras, J.).

Accordingly, this Court should enter judgement on liability against Sports Equipment pursuant to Rules 55 and 56 for unpaid fringe benefit contributions in the amount of $234,323.29.

### B. Liability for Unpaid Interest

Under ERISA, 29 U.S.C. §1132, Trust Funds are entitled to collect interest on the unpaid contributions. Section 1132(g)(2)(B) provides as follows:

> **(2)** In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
> . . .
> **(B)** interest on the unpaid contributions,
> . . .
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26.

*See* 29 U.S.C. §1132(g)(2). And, section 6621 of title 26 provides as follows:

> **(2) Underpayment rate.** The underpayment rate established under this section shall be the sum of—
> **(A)** the Federal short-term rate determined under subsection (b), plus
> **(B)** 3 percentage points.

This is consistent with the trust agreements which also allow the Trust Funds to collect interest on the amount due. (Decl. of J. Libby ¶8, Ex. 6)

Therefore, the Trust Funds are entitled to recover interest based on the statute. The amount due as interest on the fringe benefit contributions as of April 26, 2017 is $28,250.99.[2]

---

[2] The Trust Funds calculated damages through the date when Sports Equipment Installation, Inc.'s response is due.

(Decl. of J. Libby ¶9, Ex. 6) Accordingly, this Court should award the Trust Funds interest in the amount of $28,250.99 pursuant to 29 U.S.C. §1132(g)(2).

### C. Liability for Liquidated Damages

Under ERISA, 29 U.S.C. §1132, the Trust Funds are entitled to collect liquidated damages on the unpaid contributions. Section 1132(g)(2)(C)(ii) provides as follows:

> **(2)** In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
> . . .
> **(C)** an amount equal to the greater of—
>  . . .
> **(ii)** liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

This is consistent with the trust agreements which also allow the Trust Funds to collect liquidated damages of 1.5% monthly on the amount due. (Decl. of J. Libby ¶8, Ex. 6)

The total liquidated damages calculated at 1.5% per month compounded and capped at 20% equal $46,864.67. (Decl. of J. Libby ¶9, Ex. 6)

### D. Liability for Auditor's Fees

Under ERISA, 29 U.S.C. §1132, the Trust Funds are entitled to recover auditors' fees incurred to prove the amount of contributions owed:

> ERISA itself grants the district court authority to award the plaintiffs their reasonable attorney's fees and costs in successful actions to collect unpaid fringe benefit contributions owed to multi-employer plans, 29 U.S.C. § 1132(g)(2)(D), along with 'such other legal or equitable relief as the court deems appropriate,' id. § 1132(g)(2)(E). This court, among others, has construed the latter provision to include an award of audit costs. *Moriarty ex rel. Local Union No. 727, I.B.T. Pension Trust v. Svec*, 429 F.3d 710, 721 (7th Cir. 2005) (*citing Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1343 (9th Cir. 1988)).

*See Trustees of the Chicago Plastering Institute Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 902 (7th Cir. 2009).

The Trust Funds have incurred $3,210.80 in auditors' fees for the audit of Sports Equipment's fringe benefit contributions to the Trust Funds during the Audit Period. (Decl. of J. Libby ¶7, Ex. 6) Accordingly, this Court should award the Trust Funds $3,210.80 in reasonable auditors' fees for the audit of Sports Equipment's books and records to determine that it owed unpaid fringe benefit contributions.

**E. Liability for Attorneys' Fees and Costs**

Sports Equipment is also liable for the Trust Funds' attorneys' fees and costs. Under ERISA 29 U.S.C. §1132, Trust Funds are entitled to recover attorneys' fees and costs incurred to collect the unpaid contributions. Section 1132(g) provides as follows:

> (g) Attorney's fees and costs; awards in actions involving delinquent contributions … (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the <u>court shall award the plan</u>—.… (D) reasonable attorney's fees and costs of the action, to be paid by the defendant …

*See* 29 U.S.C. §1132(g)(2) (emphasis added).

Here the Trust Funds incurred $31,749.93 in attorneys' fees and costs. The total fees and costs are comprised of $26,558.50 for attorney time, $1,184.00 in paralegal time and $4,007.93 in costs. The attorney time for attorneys, who each have 22 and 18 years of experience respectively, was billed at $160 / hour, $205 / hour and $220 / hour and the paralegal, who has more than 10 years of experience, was billed at $60 / hour and $100 / hour. (Decl. of K. McJessy ¶¶2,4, Ex. 11) Billing statements are admissible to show the reasonableness of attorneys' fees and costs in ERISA cases. *See Trustees of the Chicago Plastering Inst. Pension Trust*, 570 F.3d at 903 (relying on attorneys "time records"); *Chicago Regional Council of Carpenters Pension Fund v. RCI Enterprises, Inc.*, 2011 U.S. Dist. LEXIS *6-7 (N.D. Ill., July 20, 2011) (Feinerman, J.) (relying on billing time records for award of attorneys' fees). Moreover, the fees charged

here of $160 per hour, $205 per hour and $220 per hour are not only incredibly reasonable but a great bargain and below market rate compared to the rates charged by other attorneys handling similar ERISA matters in the Northern District of Illinois. As a matter of law, the Northern District of Illinois has recognized that hourly rates of $250 per hour are reasonable rates for attorney time for ERISA litigation. *See Trustees of the Chicago Regional Council of Carpenters Pension Fund v. RCI Enterprises, Inc.,* 2011 U.S. Dist. LEXIS *6 (N.D. Ill.) (holding that attorney rates $250/hr is a reasonable hourly rates for ERISA lawsuit by the Chicago Regional Council of Carpenters); *Board of Trustees of the Rockford Pipe Trades Indus. Pension Fund v. Fiorenza Enters.*, 2011 U.S. Dist. LEXIS 28209, 21-22 (N.D. Ill. Mar. 18, 2011) (holding that hourly rates of $235 per hour was reasonable for fringe benefit trust funds lawsuit against employer to collect unpaid contributions); *Divane v. Mitchell Sec. Sys.*, 2008 U.S. Dist. LEXIS 27825 (N.D. Ill. Apr. 7, 2008) ("The court finds that the billing rates [of $220.00 to 240.00 for attorneys] are reasonable.").

**IV.    CONCLUSION**

Based on the forgoing, the Trust Funds respectfully request that this Court enter judgment in favor of the Trust Funds and against defendant Sports Equipment Installation, Inc. in the amount of $344,399.68, including unpaid fringe benefit contributions in the amount of $234,323.29, interest of $28,250.99, liquidated damages of $46,864.67, auditors' fees of $3,210.80 and attorneys' fees and costs in the amount of $31,749.93.

CHICAGO REGIONAL COUNCIL OF CARPENTERS
PENSION FUND *et al.*

By: ____s/ Kevin P. McJessy_____
      One of their attorneys

Kevin P. McJessy
MCJESSY, CHING & THOMPSON, LLC
3759 North Ravenswood, Suite 231
Chicago, Illinois 60613
(773) 880-1260
(773) 880-1265 (facsimile)
mcjessy@mcandt.com

## CERTIFICATE OF SERVICE

I, Kevin P. McJessy, an attorney, certify that I caused the foregoing **Plaintiffs' Motion For Entry Of Judgment Against Defendant Sports Equipment Installation, Inc. Pursuant To Federal Rules Of Civil Procedure 55 and 56** to be served upon

    Todd Miller
    Kathleen Cahill
    Megan Moore
    Allocco Miller & Cahill
    20 N. Wacker Dr., Ste. 3517
    Chicago, IL  60606

via electronic delivery via the Court's CM/ECF system on this 19th day of April 2017.

                                                    _s/ Kevin P. McJessy_____
                                                    Kevin P. McJessy